MILLHEIM ELECTRIC TEL. CO. et al. v. WESTERN ELECTRIC CO.

(Circuit Court of Appeals, Third Circuit. June 8, 1899.)

No. 16.

PATENTS—TELEPHONE CIRCUIT AND APPARATUS.
 The Carty patent, No. 449,106, for a telephone circuit and apparatus, *held* not anticipated, valid, and infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

This was a suit in equity by the Western Electric Company against the Millheim Electric Telephone Company, J. C. Spiegelmyer, and W. L. Goodhart for alleged infringement of the Carty patent for telephone circuit and apparatus. In the circuit court the patent was held valid and infringed, and decree entered accordingly. 88 Fed. 505. From this decree the respondents have appealed.

Josiah McRoberts, for appellants.

George P. Barton, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. The respondents herein (the complainants below) filed their bill of complaint, alleging infringe-

ment of letters patent No. 449,106, granted March 31, 1891, to John J. Carty, and by several assignments duly transferred to the complainants. The defenses set up in the answer were lack of novelty and patentability, prior publication, and noninfringement. An examination of the record shows that prior to the Carty invention much difficulty had been experienced in communicating telephonically between different stations on a many-party line. The difficulty was increased with the number of stations, and their distance from each other. This was due in part to the fact that the stations were, as entireties, connected on a series system, so that the call generator, the bell ringer, and the voice currents had each to pass in series through each instrument, whereby the energy of the current was dissipated before reaching the distant station, and in part because the lines were electrically unbalanced, and subject to serious internal inductive disturbances, as well as from neighboring wires and currents. To obviate these difficulties, Carty discontinued the practice of including the call-sending generator and the call-bell magnets and the telephone serially in the same circuit when calling, and substituted the connection of the said appliances in parallel bridges. The bell-magnet bridge was equipped with a magnet having a high coefficient of self-induction, and was normally and permanently closed at all stations. The generator bridge circuit was normally open, but adapted to be closed when sending a call. The connection of the telephone in a third bridge circuit at each station was normally open, but capable of being closed in multiple with its own bell-magnet circuit and the bell-magnet circuits of all the other stations when in use. The practical result was that when the call-bell generator was closed, and put in connection with the main-line circuit, the low-frequency current of the call bell short-circuited through the bell magnets, and the bells were rung at all stations, including the home station. The call bell generator circuit was then opened and disconnected. The telephone circuits between the two stations desiring to communicate were then closed, and thereby put in multiple with each other and the call bell magnets circuit. But, while the telephone circuits were so in multiple with the bell-magnet circuits, yet the high-impedence magnets in the bell-magnet circuits rendered these last-named circuits opaque to the high-frequency voice currents of the telephone, and enabled them to be transmitted undiminished over their own low-impedence circuit to the receiver with which they were in connection. By this combination of devices, Carty obtained the effect of two distinct and separate circuits, one of which was adapted to the low-frequency currents of the bell generator, and the other to the high-frequency voice currents of the telephone. It also had the effect of electrically balancing the lines, and thereby reducing to a minimum the annoyances of induction which had so seriously interfered with the usefulness of the old system. So far as the record shows, there was no anticipation of this device. All the elements of the combination had been used before, and the functions of each were well known in the art, but it does not appear that they had ever been similarly specifically combined for effectuating the purpose here accomplished. The grant of the patent carries with it the presump-

tion of patentability, and this presumption has been strengthened by the general acceptance of the device, the acquiescence of those skilled in the art, and their willingness to accept licenses thereunder. We have carefully considered the questions of prior publication and anticipation. The differences between the patent in suit and those cited as most nearly approaching the Carty device have been fully and particularly set out in the opinion of the learned judge below. We fully concur in his conclusions, and refrain from drawing the distinctions, lest we should but repeat what he has so clearly expressed. Infringement is charged in the bill, and not denied, except in the unverified answer. Complainant's witness, after examination of defendant's system, testified that it was constructed and organized completely in accordance with the instructions contained in the patent in suit. Though these facts were peculiarly within their own knowledge, the defendants offered no contradictory evidence bearing on the question. We are of opinion that the patent is valid and infringed. The decree of the circuit court will be affirmed.